ON PETITION FOR REHEARING GRANTED
MELVIN, Judge.
Appellant-Mills (Mills) appeals an order dismissing his second amended complaint with prejudice.
Mills is a trustee of the testamentary trust established under the Last Will and Testament of Alfred I. duPont. Appellees-Edward Ball (Ball) and The Florida First National Bank of Jacksonville (First National) are also trustees. In 1973, the Board of Governors of the Federal Reserve System (Board) ordered the duPont Trust to divest itself of 2,330,638 shares of the common stock of appellee-Florida National Banks of Florida, Inc. (Florida National). Florida National is a holding company and the sole owner of the corporate trustee, First National. Pursuant to the Board’s order, the trustees entered into a sale agreement with appellee-Florida National Associates, Inc. (FNA). Simultaneously with the execution of the sale agreement, the trustees entered into an irrevocable living trust agreement transferring the stock in trust to the People’s First National Bank *498 of Miami Shores. Under the terms of the stock trust agreement, the stock was to be held by the Miami bank until purchased by FNA or another purchaser designated by FNA.
The sale agreement provided for FNA’s purchase price to be the bid price per share for the stock as reported by the National Association of Securities Dealers in its over-the-counter quotation sixty days after the day on which sale of the stock is approved by the Board of $18.00 whichever was greater. Pursuant to the terms of the sale agreement, FNA had the option to refuse to purchase the stock, and, if it chose to do so, to designate to the Miami bank a substitute purchaser of the stock after, approval of that purchaser by the Board. If FNA made a designation of an approved purchaser, then the sale price of the stock was to be not less than that which FNA was obligated to pay for the stock. If FNA failed to designate a purchaser, the stock was to be sold at a public sale.
The officers and directors of FNA subsequently determined that the corporation would be financially unable to purchase the stock. Pursuant to the option to designate a substitute purchaser, FNA began, during 1977, to consider offers from interested parties concerning the purchase of Florida National’s stock. On August 22, 1977, Florida National itself made an offer of $18.00 per share, payable in cash, to FNA to purchase its shares. Another offer was submitted to FNA on August 25, 1977, from ComBanks Corporation, another holding company, stating a purchase price of $18.50 per share, payable in cash, or, in the alternative, a purchase price of $19.00 per share to be paid over a two year period. On that same date, FNA submitted to the Board the offer made by Florida National. FNA did not submit for the Board’s consideration either of the two alternative offers made by Com-Banks, although both were higher than the offer made by Florida National. On September 21, 1977, the Board approved FNA’s designation of Florida National as a purchaser of its own shares. FNA then designated to the Miami bank The Florida National Banks of Florida, Inc., as the purchaser of the stock, and the sale was consummated on November 23,1977, at a price of $18.00 per share.
Subsequent to the sale of the stock, Mills filed his second amended complaint. Count I of that complaint seeks damages against Ball, the corporate trustee, First National, FNA, and the holding company, Florida National, based on the alleged breach of the fiduciary obligations imposed upon each of those parties under standard principles of applicable trust law. Count II seeks damages against FNA and Florida National Bank based on the alleged negligence of FNA, and the vicarious liability of Florida National therefor, arising out of the sale of the stock. The last count seeks damages against Ball and Florida National based on their alleged tortious interference with the contractual relationship which existed between the trust and FNA. The basis of the law suit concerns the loss to the trust of $1,165,319 resulting from the sale of the stock to Florida National for $.50 per share less than the cash offer submitted by Com-Banks.
It is too well settled to require citation that a motion to. dismiss admits the well pleaded allegations of the complaint. The facts properly pleaded are taken as true.
However, notwithstanding those legal principles, appellees submit that a motion to dismiss does not admit allegations that are contradicted by records of which the trial court may take judicial notice. Byrne Realty Co. v. South Florida Farms Company, 81 Fla. 805, 89 So. 318, 327 (Fla.1921); Freimuth v. State, 272 So.2d 473 (Fla.1972). Therefore, appellees urge us to take judicial notice of the statements of fact made by the Board in its “statement in connection with order approving designation of purchaser of shares of Florida National Banks of Florida, Inc.”. 42 Fed.Reg. 54, 872 and the Federal Bank Holding Company Act, 12 U.S.C. § 1842.
Primarily, appellees urge that Florida National’s offer was the only bona fide offer presented to the lower court because *499 the record in this proceeding shows that ComBanks’ offer was not a bona fide offer. Specifically, appellees contend that 12 U.S.C. § 1842 made a purchase by Com-Banks impossible.
Subsection (a) of that statute requires that before one bank holding company can purchase more than 5% of the outstanding shares of another bank, holding company, prior approval of the Federal Reserve Board must be obtained. Appellees state that the Florida National stock involved was approximately 25% of the then outstanding stock of Florida National. Appel-lees also submit that the name “ComBanks” used in the complaint indicates that it was a bank holding company. Although the allegations of the complaint do not make that fact crystal clear, appellees contend and appellant Mills does not deny that Com-Banks was a bank holding company and such was established at a hearing before the trial court in September, 1977.
Further, appellees argue that according to subsection (b) of 12 U.S.C. § 1842, once an application for approval has been filed with the Board, the Comptroller of Currency has 30 days after the Board gives notice within which to comment upon the acquisition. If the Comptroller disapproves, the Board must, within three days, set a public hearing which would have to commence not less than ten nor more than thirty days thereafter.
Accordingly, appellees conclude that since ComBanks made its offer August 25, 1977, and according to the sale agreement the deadline for effecting a private sale of the Florida National stock was September 22, 1977, it was legally impossible for Com-Banks to make a purchase in that time period.
On the other hand, appellant states that 12 U.S.C. § 1842(b) provides for emergency situations by stating: “The views and recommendations shall be submitted within thirty calendar days of the date on which notice is given, or within ten calendar days of such date if the Board advises the Comptroller of the Currency or the State supervisory authority that an emergency exists requiring expeditious action.” (emphasis supplied) Therefore, appellant submits that if FNA designated and submitted ComBanks’ offer to the Federal Reserve Board on August 25, 1977, when it was made, along with the offer of Florida National, there would have remained enough time for the Board to have acted to approve or deny the ComBanks’ offer. Accordingly, appellant submits that the trial court could not determine as a matter of law what the Federal Reserve Board might or might not have done given the opportunity to rule upon the ComBanks’ offer.
The position thus asserted by the appellant is plagued with the problem that the provisions referred to in 12 U.S.Code, Section 1842(b) were not the law either on August 25, 1977, or September 23, 1977. Such provisions became the law on November 16, 1977. Therefore, the same may not be considered in the disposition of the case now before this court. We further note that under the provisions of 12 U.S.Code, Section 1842(b), which were in effect during all dates material to the disposition of this question, it was the responsibility of Com-Banks to file its application with the Board rather than to depend on FNA to file such application for it.
The applicable provisions of Section 1842(b) provided for a mandatory thirty day waiting period, upon receiving any application for approval and notice thereof having been given to the Comptroller of the Currency. During this time the Comptroller of the Currency would prepare his views and recommendations for the consideration of the Board. Obviously ComBanks’ offer of August 25, even if considered to have been legally tendered when the same was filed with FNA, was submitted on such a late, date as to make it impossible to be processed and accepted by the dead line of September 22. We do not find any authority in the Bank Holding Company Act that would authorize the Federal Reserve Board to reduce any of the time periods affirmatively required under the act then in effect.
All of the charges of alleged misconduct made by the appellant against the appellees *500 (trustees) are anchored directly or indirectly to the alleged duty of the trustees to submit ComBanks’ late offer. The offer having come at a time not within the framework of the applicable provisions of the Federal Code, was one that was legally impossible to be processed. Therefore, the appellees did not breach any duty with reference to this matter. The trial court was imminently correct in dismissing with prejudice the second amended complaint. The final judgment appealed from is AFFIRMED.
MASON, ERNEST E., Associate Judge, concurs.
ERVIN, Acting C. J., specially concurs.