376 So.2d 1174 (1979)
Edward BALL, Florida First National Bank of Jacksonville, As Trustees under the Last Will and Testament and Codicils Thereto of Alfred I. DuPont, Deceased, Florida National Associates, Inc., a Florida Corporation, and the Florida National Banks of Florida, Inc., a Florida Corporation, Appellants,
v.
William B. MILLS, As Trustee under the Last Will and Testament and Codicils Thereto of Alfred I. DuPont, Deceased, Appellee.
No. KK-278.
District Court of Appeal of Florida, First District.
October 4, 1979.
Rehearing Denied December 12, 1979.
*1176 Fred H. Kent, Jr., William L. Durden, of Kent, Sears, Durden & Kent, Jacksonville, for appellants.
Christine Rieger Milton and James F. Valenti, Jr., and John H. Wilbur, of Milam & Wilbur, E. Earle Zehmer, of Bedell, Bedell, Dittmar & Zehmer, Jacksonville, Richard R. Paige, Miami, T. Edward Austin, Jacksonville, for appellee.
LARRY G. SMITH, Judge.
Appellants[1] appeal from an order of the trial court awarding interim attorney's fees to Appellee[2] in connection with this litigation. We reverse.
The trial court ordered the duPont Trust to pay for all services rendered by counsel for the several trustees in this litigation to and including the date May 31, 1978, "to be applied against the reasonable fees to be determined and allowed upon final conclusion of the litigation". The order does not specify the amount to be paid to Mills' attorneys, but does set forth an hourly rate for attorney's fees based upon years in practice, and directs the trustees to pay based upon the rates found reasonable by the court within ten days after presentation of statements for such fees to the trustees. The order contains no findings or conclusions upon which the award of interim attorney's fees is based other than the following general statement:
"The court determines that it is unreasonable and inconsistent with a trustee's right to employ counsel for such trustee, or his respective attorneys, to fund the litigation out of personal funds on account of legal services rendered solely on account of the administration of the trust estate and the defense of actions involving him solely as a trustee." (Order, June 13, 1978).
An order preceding the attorney's fees order dismissed Mills' second amended complaint for failure to state a cause of action. That order was appealed and the action of the trial court in dismissing the complaint with prejudice has been affirmed by this court in Mills v. Ball, et al., 372 So.2d 497 (Fla.1st DCA 1979)[3]. The opinion in that case contains a detailed analysis of the factual allegations of the second amended complaint, the arguments and contentions of the parties, and the legal conclusions adopted by this court in holding the complaint insufficient to state a cause of action as a matter of law.
This particular litigation commenced with the filing of a complaint on August 26, 1977 by Mills, as one of the trustees of the duPont Trust, against trustee Ball and all other co-trustees of the trust with the exception of Alfred duPont Dent. The complaint sought to prevent Ball and the other trustees (except Dent) from entering into an agreement for sale of common stock owned by the trust to Duke University. The complaint also sought a declaration of plaintiff Mills' rights and duties as a trustee under the sale agreement and trust agreement executed by the trustees in December, 1974, in compliance with an order from the Board of Governors of the Federal Reserve System directing the duPont Trust to divest itself of 2,330,638 shares of the common stock of Florida National Banks of Florida, Inc.[4] (FNB). The complaint also sought, by *1177 way of alternative relief, an order requiring the trustees to give notice to prospective purchasers who might be interested in the stock, and to require them to entertain offers for the purchase of the stock on negotiated terms with respect to interest, time of payment, and price per share. At a hearing on application for temporary injunction on September 6, 1977, the trial judge denied relief and dismissed the complaint upon being informed that the agreement with Duke University had already been executed, and therefore could not be enjoined. Appellee Mills was given leave to amend.
Appellee thereafter on September 16, 1977 filed his amended complaint seeking a court determination of whether the majority trustees had the power to vary the December, 1974, sale and trust agreement for the stock, an injunction prohibiting consummation of the purported sales agreement with Duke University, and an order requiring the trustees to consider all offers to purchase the stock notwithstanding the terms and provisions of the sale and trust agreement. This complaint contained several counts the gist of which sought to have the court take control of the sale of the stock, and to impose damages against the trustees and others in event of a sale under terms and conditions less favorable than those Mills contended could be obtained. After a lengthy hearing on September 22, 1977, at which time the court was informed that the Duke University agreement had been repudiated or withdrawn, the trial judge ruled that no injunction or other order would be entered to prohibit or delay the pending sale to FNB, the purchaser designated by Florida National Associates, Inc. (FNA) under the provisions of the sale and trust agreement. The next day, September 23, 1977, the Federal Reserve Board approved the purchase of the stock by FNB. After a hearing on October 28, 1977, the amended complaint was dismissed, with leave to amend.
Trustee Mills then on November 28, 1977 filed his second (and final) amended complaint seeking compensatory and punitive damages from trustees Ball and Florida First National Bank of Jacksonville, Florida National Associates, Inc., and the Florida National Banks of Florida, Inc., based upon sale of the stock to Florida National Banks of Florida, Inc., for $18.00 per share, instead of to a prospective purchaser, ComBanks, for $18.50 per share. This court's opinion in Mills v. Ball, 372 So.2d 497 (Fla.1st DCA 1979), demonstrates why the ComBanks' offer was not one that required consideration by the trustees (or FNA), and why the decision of the trial court finding the second amended complaint insufficient to set forth a cause of action for alleged misconduct by the trustees and the others was correct.
At the outset it should be noticed that, so far as the award of attorney's fees is concerned, we have for consideration only the bare allegations of the several complaints themselves, the documents to which they refer, the motions and other pleadings of the parties pertaining to attorney's fees, attorney's affidavits as to reasonable hourly rates, and the transcript of testimony and proceedings before the trial court on August 30, 1977, September 20, 1977, and February 28, 1978.[5] Although the order awarding interim attorney's fees refers to the fact that several hearings with respect to the issues submitted by the pleadings were held, there is no transcript of any hearing specifically on the matter of attorney's fees, and it does not appear that any testimony or other proof was submitted to the court other than that which was presented at the hearings on application for temporary injunction.
The amendment to motion for interim attorney's fees and costs is a 19 page (legal size) document containing 68 numbered paragraphs, 67 of which contain a recitation of the background events and controversies between the parties, and an outline of the major steps in five other legal actions besides the instant case in which Mills' attorneys *1178 of record have participated as counsel in his behalf.
Paragraph 68 contains a summary of the services rendered in terms of hours expended and costs incurred. This final paragraph shows a total of 2,289 hours, of which 252.25 hours were expended in this case, and a total claim of $97,758.75 in attorney's fees, plus $6,211.50 in costs. Our calculations indicate an hourly charging rate averaging $42.708 per hour.
The parties are not in serious disagreement on some basic principles of law governing employment and payment of attorneys by trustees. Appellee argues in support of the award of interim attorney's fees that the statutes authorize employment of attorneys by the trustee in connection with the carrying out of his fiduciary duties. Section 737.302, Florida Statutes, sets forth the "Prudent Trustee" standard of care and performance. Section 737.404, dealing with the actions of co-trustees, contains a provision limiting liability of a dissenting trustee whose dissent is expressed in writing at or before the time of the trustees' action; but it is expressly provided that this provision does not excuse a co-trustee from liability for failure either to participate in the administration of the trust, or to attempt to prevent a breach of trust. Trustees are given the general power under Section 737.402(2)(z) to prosecute or defend actions or proceedings for the protection of trust assets and of the trustee in the performance of his duties. Finally, Section 737.402(2)(y) authorizes a trustee to employ persons, including attorneys, to advise or assist the trustee in the performance of his administrative duties, etc.
We note from the record of the proceedings in the court below that the trustees have already given their approval for payment of substantial attorney's fees incurred by the trustees, including Mills, in connection with other actions. Some of these payments would be considered as "interim" fees. The parties differ violently, however, with respect to Mills' entitlement to attorney's fees in the case sub judice. Appellants strenuously object to the award of attorney's fees under attack because it is an award of interim attorney's fees, rather than a final award at the conclusion of the litigation. Appellants contend that in addition to the ordinary requirements  that the litigation must be brought in good faith, that it must be necessary, and that the trust must have been benefited  in an action by a trustee against a co-trustee for removal or surcharge the complaining party seeking fees must have prevailed in that litigation.
Appellee concedes that under Florida case law the prerequisites of good faith, necessity, and benefit to the trust must be established for an award of attorney's fees. However, appellee takes issue with appellants' argument that in so-called "adversary" (trustee v. trustee) litigation the complaining party must have "prevailed", or won the lawsuit, in order to be entitled to attorney's fees. Appellee supports his argument on this point primarily with cases from other jurisdictions which we find persuasive.
In Northern Trust Co. v. Continental Illinois National Bank and Trust Co., 43 Ill. App.3d 169, 1 Ill.Dec. 767, 356 N.E.2d 1049 (1976), two trustees filed an action against their co-trustee alleging, among other things, breach of trust and other claims. Award of attorney's fees to the plaintiff trustees' attorneys was upheld by the appellate court on the grounds that the litigation was necessary because the trustees were in irreconcilable conflict which necessitated a final judicial resolution. The court determined that expenses incident to the preservation or benefit of a trust are properly chargeable against the trust estate, and the award of such costs and attorney's fees is not conditioned upon the outcome of the litigation.
In Detroit Trust Co. v. Blakely, 359 Mich. 621, 103 N.W.2d 413 (1960), the Supreme Court of Michigan found, in a case involving litigation between co-trustees, that the circumstances of the case, in which the trustees sought instructions from the court on the propriety of an investment, justified the award of attorney's fees. A similar rule *1179 has been followed by the Supreme Court of our sister state of Alabama in Dent v. Foye, 214 Ala. 243, 107 So. 210 (1925), where the court recognized that an administrator or other trustee, charged with the legal duty to faithfully execute a trust, may be allowed his attorney's fees in litigation brought in good faith, although he failed to prevail therein. Further, said the court:
"... The test is, [w]as the litigation undertaken in the due and vigilant performance of the duties of his trust  such as the court would have sanctioned upon a full presentation of the conditions?" (opinion at page 215)
See also Zaring v. Zaring, 219 Ind. 514, 39 N.E.2d 734 (1942), and American National Bank of Beaumont v. Biggs, 274 S.W.2d 209 (Tex.Civ.App. 1954).
Finally, comment b to Section 188, Restatement (2nd) of Trusts with respect to expenses incurred by a trustee which are necessary or appropriate to carry out the purposes of the trust, states:
"The trustee can properly incur expenses for costs in maintaining or defending an action in the proper administration of the trust even though he is unsuccessful in the action."
A trustee seeking reimbursement for attorney's fees and costs incurred in litigation which he has initiated bears the burden of proving both that he is entitled to recover these expenses, and the reasonableness of the amount claimed. In Vazquez v. Goodrich, 206 So.2d 54 (Fla.3rd DCA 1968), the court held that a trustee who has acted in good faith in defending trust property may recover attorney's fees; but in such a case, the burden of proof is upon the trustee to show that the money expended was a proper disbursement.
In reversing, in part, an award of attorney's fees for a trustee who had initiated litigation involving the trust, this court in Barnett v. Barnett, 340 So.2d 548 (Fla.1st DCA 1977), said:
"... When a trustee seeks to charge a trust corpus with an expense incurred by him, including attorney fees, the burden of proof is upon the trustee to demonstrate that the expense was reasonably necessary and that such expense was incurred for the benefit of the trust, and not for his own benefit nor the benefit of others." (opinion page 550)
Therefore, in addition to a showing of reasonableness of the amount of the expense, the trustee is burdened with the necessity of showing his good faith, the necessity for the expense, and that the litigation was of benefit to the trust.
The decisions on this subject (payment of litigation expenses from trust assets) reflect a recognition on the part of the courts that the best interests of the trust beneficiaries will be served by a rule that removes financial barriers that otherwise would deter or entirely prohibit court action for the protection of trust assets, or for the accomplishment of other legitimate trust objectives.[6] On the other hand, the requirements of good faith, necessity, and benefit to the trust are just as much a part of the rule, and rightly so, in recognition of the destructive effects of ill conceived, indiscriminate or selfishly motivated litigation.
If we interpret appellee's contentions correctly, the necessity for this litigation is to be found in the alleged wrongdoing on the part of his co-trustees. However, we find no evidence and no ruling by the trial court on these issues to bolster appellee's contentions. Appellee argues that benefit to the trust may be found in the circumstance that after the filing of his amended complaint, the so-called "Duke offer" was withdrawn. Thus, appellee argues, (Appellee's brief page 5), "... the influence is clear that the filing of the lawsuit by Mills caused the offer's withdrawal and consequent benefit to the Trust". The difficulty with appellee's position is that these factual conclusions have not been tried before the *1180 trial judge, and we are not at liberty to adopt such factual conclusions based merely upon argument of counsel. Furthermore, the various complaints containing Mills' allegations of wrongdoing with respect to the Duke negotiations, failure to approve the ComBanks' offer, and other matters have all been dismissed for failure to state a cause of action.
We conclude that the necessity for this litigation and its benefit to the trust is not apparent at the stage of this proceeding as it appears before us. In this connection we find what may be perhaps an inadvertent concession of the inadequacy of the record to support the award of attorney's fees in appellee's brief:
"Counsel for Appellee Mills, unlike Appellants' counsel, will not argue the construction or proper interpretation of the documents relating to the sale of the Stock, or the merits or demerits of the various Complaints filed by Mr. Mills; ..." (Appellee Mills' brief page 6)
By the same token we will not adopt the factual and legal conclusions drawn by appellants' counsel on the "merits or demerits" of the various complaints, pursuant to which appellants urge us to deny attorney's fees in this litigation because appellee has not prevailed.[7]
Appellants state in their brief that they will not argue plaintiff's "good faith", a declaration we find somewhat difficult to comprehend in view of arguments we find both in the briefs before this court, and in the record of the proceeding before the trial judge. Whether relevant to "good faith", or to "necessity", or "benefit to the trust", we find certain aspects of this matter that will require further exploration and interpretation by the trial judge when this cause is remanded. More particularly, it is a matter of record that trustee Mills was a party to and gave his consent to the original sales and trust agreement with Florida National Associates, Inc. and People's First National Bank of Miami, pursuant to which all of the actions of the trustees and other parties of which Mills complains have been taken. It is further apparent that one of Mills' law partners, Hugh Culverhouse, became actively involved in efforts to purchase the holding company shares in controversy. When the Culverhouse offer was first made it was for an undisclosed client, but it later developed that the proposed purchaser was ComBanks, a bank holding company.[8] It is the alleged loss of profits to the trust that would have been realized by such a sale that forms the basis for the second amended complaint, the dismissal of which with prejudice we have most recently affirmed. It is also observed that the record of hearings before the trial judge indicates that a great deal of the argument in support of the amended complaint centered around appellee's contentions that the trial judge should have issued orders specifically directing that ComBanks be considered as a prospective purchaser, as against the counter-argument that this could have had the effect of delaying the sale beyond the period specified in the agreements.[9] Furthermore, *1181 as pointed out in our opinion in Mills v. Ball, 372 So.2d 497 (Fla.1st DCA 1979) the Combanks' offer was not timely submitted. In any event the agreement for sale by which trustee Mills was bound as a party specifically prohibited purchase by a trustee or anyone "affiliated" with a trustee; and as indicated in footnote 8, the status of Mills' law partner with respect to ownership in ComBanks, or as an interested prospective purchaser, has not been established in the record before this court.
These agreements themselves established definite rights and obligations binding upon all parties  the duPont Trustees, FNA, and the Peoples First National Bank of Miami Shores[10]  governing the ultimate disposition of the stock. The sale and trust agreements were executed in December of 1974, and trustee Mills signed them as did all other duPont trustees. The initial complaint in this litigation was filed less than one month prior to the September 23, 1977 deadline for effecting sale under the agreements, beyond which time the provisions requiring public sale would be effective. All parties have indicated that a public sale would have resulted in a drastic loss to the trust.
A substantial question exists as to whether Mills, who waited until shortly before the deadline for consummation of a private sale to FNA's designee to file suit seeking a court order agreeing with his own individual interpretation of the agreements, has necessarily demonstrated good faith and prudent action on his part.[11] If not, Mills' entitlement to attorney's fees and costs of this litigation may be subject to serious question.
We cannot agree with appellants that recovery of attorney's fees in litigation by one trustee against another is dependent upon whether the complaining trustee has prevailed in the action. Neither can we agree that under no circumstances may an award of interim attorney's fees be made prior to conclusion of the litigation. But we do agree with appellants' final contention that in this case the complaining trustee, Mills, has failed to offer proof which would justify the award of interim attorney's fees, and that his application for attorney's fees was deficient in that the basis for the award in terms of the services rendered, and the time devoted to the various steps in these proceedings, has not been shown.
The trust is entitled to have notice of the amount claimed and the specific services for which compensation is claimed, and to have the court make a determination of the reasonableness and necessity for the charges. A mere statement indicating the expenditure of a certain number of hours and a demand for payment based upon the number of hours times the hourly rate, is not sufficient. The reasonableness and necessity of the services generally, and the reasonableness and necessity of the time devoted to each step in the proceeding must be determined by the trial judge, and it must be determined, as well, that all of the claimed services were rendered for the benefit of the trust itself, and not for some other purpose. Otherwise, it is a matter of mere speculation and conjecture as to what services are being compensated, and whether the same would actually qualify for reimbursement from the trust.
It is obvious to us that this litigation, as well as other pending controversies between these parties, has not been concluded; but the magnitude of our task in resolving these and other matters yet to be presented justifies, in our opinion, a few simple observations for possible consideration by the trial court, counsel, and the parties.
*1182 The law favors the peaceful resolution of controversies, without necessity for resorting to the courts for solution, if at all possible. See 6 Florida Jurisprudence, Compromise and Settlement, Section 4, "Policy of Law". The administration of trusts by multiple trustees does not seem to us to present an exception to this rule.
It goes without saying that co-trustees owe to each other, as well as to the beneficiaries of the trust, the duty and obligation to so conduct themselves as to foster a spirit of mutual trust, confidence, and cooperation to the extent possible. At the same time, the trustees should maintain an attitude of vigilant concern for the proper administration or protection of the trust business and affairs.
When litigation results in whole or in part from a willful failure on the part of a trustee to allow himself to be guided by these salutary principles, that trustee should bear a heavy burden in convincing a court that his litigation expenses should be borne by the trust. And the mere filing of a complaint meeting the legal test for stating a cause of action, without more, would not seem sufficient basis upon which the court may award attorney's fees payable out of trust assets. The basis for such an award is even less supportable when the complaint fails to state a legal cause of action.
In adversary proceedings brought by one trustee against co-trustees, particularly when, as here, the record amply reflects the existence of an on-going internecine power struggle between the trustees, it would seem imperative that the litigation must progress to such a stage as will make possible the elimination of any taint of self-interest on the part of the complaining trustee before trust assets may be appropriated to finance it. We think it is obvious that the trial court should proceed with caution in allowing payment of fees in the very early pleading stages of litigation before a determination can be made, with a rather firm degree of confidence, that legitimate interests of the trust lie at the heart of the controversy. The adoption of any other rule would tend to encourage, rather than to discourage, unneeded and possibly improperly motivated litigation.
On the other hand the statute, Section 737.404(3), Florida Statutes, recognizes the possible liability of a co-trustee "for failure either to participate in the administration of the trust or to attempt to prevent a breach of trust". It is generally held that a trustee is entitled, and is under a duty, to bring suit against a co-trustee in a proper case, as in Pagiasis v. Robillard, 171 So.2d 630 (Fla.3rd DCA 1965) (suit for accounting and recovery of improper disbursements).
If in spite of every effort by a trustee to carry out his duties in a manner exhibiting his concern for the maintenance of a spirit of trust and cooperation, and with due regard for the honest convictions and opinions of his co-trustees with whom he differs, his vigilant concern for the proper administration or protection of the trust requires him to take legal action, we do not think that a partial award of attorney's fees and court costs from trust assets must necessarily await the final conclusion of the lawsuit.
The order directing payment of interim attorney's fees is reversed, and the cause is remanded for further proceedings consistent with this opinion.
McCORD, Acting C.J., and MELVIN, Associate Judge (Retired), concur.
NOTES
[1] Edward Ball and The Florida National Bank of Jacksonville, are two of the trustees of the testamentary trust under the Last Will and Testament of Alfred I. duPont.
[2] William B. Mills, a co-trustee of the duPont Trust.
[3] The presentation of this matter by counsel and its consideration by the court has been complicated somewhat by the fact that at the time of oral argument this court's original opinion in Case No. JJ-270 had already been issued. That opinion reversed the trial court's dismissal of the second amended complaint, but was thereafter withdrawn and replaced by the opinion and decision on rehearing sustaining the dismissal.
[4] Florida National Banks of Florida, Inc., is the parent company of appellant, The Florida National Bank of Jacksonville, a trustee. See footnote 1.
[5] All transcripts of hearings and testimony are in this court in case no. JJ 270, Mills v. Ball, supra.
[6] We have already noted the incurring of over $97,000.00 in attorney's fees and in excess of $6,000.00 costs by Mills in his capacity as trustee, which would seem to bear testimony to the absence of "financial barriers" as an impediment to litigation at least up to the present time.
[7] For example, and particularly pertinent, appellants' contention that even if ComBanks had been designated as a purchaser by Florida National Associates, Inc. and sale of the stock consummated for $.50 per share higher than paid by Florida Banks, the "profit" would have belonged to FNA, not the trust. This point was rendered moot by our June 6, 1979 Mills v. Ball decision for purposes of disposition of that appeal. However, upon remand, this point would be relevant to any claim of possible "benefit" to be derived from the filing of the second amended complaint, and possibly to the requirements of good faith and necessity.
[8] Regarding the ownership of ComBanks, a suggestion is made in appellants' brief that Mr. Culverhouse owned one-half of ComBanks' stock. The trial judge at one point inquired whether Culverhouse was himself interested as a prospective purchaser and Mills' counsel responded that he expected to supply that information. However, so far as our examination of the record discloses, it was not established what interest, if any, Culverhouse owned in ComBanks, nor whether Culverhouse himself was interested as a prospective purchaser.
[9] The sale agreement gave Florida National Associates, Inc. the right to purchase the stock, or designate a purchaser. One day before the deadline for private sale FNA designated Florida National Banks of Florida, Inc., as the purchaser at the contractually determined price of $18.00 per share. Nothing in the agreement required FNA to submit other offers for approval of the Federal Reserve Board.
[10] Named as trustee in the stock sale agreement between the Trust and Florida National Associates, Inc.
[11] Appellee Mills is an attorney-at-law. Section 737.302, Florida Statutes, provides in part: "... If the trustee has special skills, . . he is under a duty to use those skills."