McCORD, Judge.
These consolidated appeals are from a declaratory judgment construing the will of Jessie Ball duPont. Appellants are William B. Mills, one of the trustees of the Jessie Ball duPont Religious, Charitable and Educational Fund, a testamentary trust created under the last will and testament and codicils thereto of Jessie Ball duPont, deceased, and the Episcopal Church in the Diocese of Florida, Inc., representing a class of potential beneficiaries under the trust. Appel-lees are Edward Ball and the Florida First National Bank of Jacksonville, two of the trustees of the testamentary trust, and others.
The suit below was instituted by Edward Ball and the Florida First National Bank of Jacksonville seeking to resolve a question relating to a class of beneficiaries. Defendant William Mills, by cross-claim and counterclaim, raised additional issues.
The fifth codicil to Mrs. duPont’s will declared:
“3. The names of certain institutions are set forth below and I request but do not direct my trustees to include them among my beneficiaries of the income. Further, I request my trustees, but I do not direct them, to include among the beneficiaries of the income the religious, charitable, literary or educational institutions to which I have made contributions during any of the five calendar years ending December 31, 1964. My trustees can obtain the names of these organizations either from my personal records or from copies of the appropriate tax returns. I do not direct the trustees to pay the income to these institutions exclusively or to any of them, and I do not direct that if distributions are made to some or all that the distribution shall necessarily be in proportion to the amounts previously given by me. In the event the trustees do not use all of the income for the institutions below named or for the organizations to which I have made contributions in the past five years, I direct that the surplus income hereunder be used for the temporary relief of individuals residing in Florida, Delaware, or Virginia who are in need. I do both request and require that all of the property be held and all of the income of the trust be devoted exclusively to religious, charitable, literary, or educational purposes, and that the recipient organizations be only those no part of the net earnings of which inures to the benefit of any private individual and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, and that no deviation from these purposes shall be made.”
Among the 425 charitable contributions made by Mrs. duPont during the five-year period mentioned above, were individual contributions to the “discretionary fund” of each of 32 clergymen. Of the 32, 24 were Episcopal, five Catholic, one Baptist, one Russian Orthodox, and one Reformed Church of America (now deceased). The question presented by the complaint was whether the gifts to these 32 donees were gifts to “institutions” thus permitting the trustees to consider those recipients for further gifts from the trust or were gifts to individuals thus disqualifying the recipients from further gifts. The Diocese was joined as a defendant in the action as a representative of the 32 potential beneficiaries.
At the trial the will and codicils, a list of the testator’s charitable bequests for the years 1960-64, affidavits and depositions of various people, and correspondence between the testator and the 32 donees were introduced in evidence. The only other evidence received by the court was the testimony of the Right Reverend Frank S. Cerveny, Bishop of the Diocese of Florida, who testified regarding the discretionary funds of the Episcopal Church, and the other churches involved. He testified that under the practice, traditional and canonical law of the Episcopal Church, discretionary funds are created and made available to ministers and bishops for use for charitable or pious purposes by the clergyman within *1130 his discretion; that the money for that purpose is funded from a commitment of collections obtained during periodic church services and from gifts and offerings for the poor made by church members and others; that the fund is a fund of the particular church administered by the individual clergyman. He testified that should a minister or bishop vacate his position, the discretionary fund remains with the institution for his successor in office. This testimony of the bishop was not disputed or rebutted. Trustees Juhan, Ball and the Florida First National Bank admitted that they had no information nor contention that gifts to the 32 donees were other than gifts to institutions. Trustee Mills conceded that he had no question regarding 20 of the donees but was of the view that gifts to 12 of the donees appeared to have been made by Mrs. duPont to the individual recipients for personal purposes. The trial court ruled that Mrs. duPont’s gifts to all 32 donees were gifts to individuals rather than institutions.
Mills, by his cross-claim and counterclaim, raised additional issues by which he sought a declaratory judgment concerning: [1] Whether, under the will, institutions eligible for grants were limited to those named in the will or those previously receiving funds from Mrs. duPont within the five-year period designated in the will. (Trustees Mills and Juhan contended that the will permits gifts to institutions other than those named and those to whom contributions had been made during the five-year period; trustees Ball and the Bank contended that the beneficiaries were limited to those either named or those within the five-year period.) [2] Whether, under the will and under the laws of Florida, each trustee of the fund is entitled to employ, at trust expense, independent counsel to assist him in connection with his duties under the trust. (Mills and Juhan contended that each trustee was permitted to employ independent counsel and need not rely on an attorney selected by the majority; Ball and the Bank contended that the trustees must all utilize one attorney.) On those questions, the trial court ruled that recipients of grants are limited to those institutions named in the will or those receiving grants from Mrs. duPont within the five-year period designated in the will. The trial court also ruled that each trustee is not entitled to employ an independent attorney for advice or other professional duties in his administration of the trust estate but must rely upon an attorney selected by the majority except in instances where no majority decision is reached and the matter is submitted to the trial court for resolution. Appellants contend the trial court erred in both of these rulings.
In the ruling of the final judgment relating to the discretionary funds, the trial court stated as follows:
“There were 32 contributions to ‘Rev.’, ‘Very Rev.’, and ‘Rt. Rev.’ (named individual) ‘Discretionary Fund’ (See Exhibit 2 of the Complaint). It was undoubtedly the intention of the Testatrix that these contributions be used for charitable and benevolent purposes (even including supplements to the income of the named cleric). But the Court finds that they were not intended as contributions to institutions. If intended as contributions to the church or to the Diocese with which the named cleric was or formerly had been associated, the contribution would have been to the named institution or organization as it was in the case of the other 393 contributions.”
While ordinarily the judgment of a trial court will not be disturbed on appeal if supported by competent substantial evidence, the normal presumption accorded to a trial court’s finding is not as strong when that finding is based upon its interpretation of documents and undisputed testimony. The Supreme Court, in Holland v. Gross, 89 So.2d 255 (Fla.1956), said:
“A finding which rests on conclusions drawn from undisputed evidence, rather than on conflicts in the testimony, does not carry with it the same conclusiveness as a finding resting on probative disputed facts, but is rather in the nature of a legal conclusion.”
*1131 There were no disputed issues of fact in the evidence adduced below. The only evidence presented as to the nature of a discretionary fund of a clergyman was the undisputed testimony of Bishop Cerveny. It is clear from his testimony that the discretionary fund is a fund of the church — the institution. The Bishop testified as follows regarding this:
“Q Would you please explain to us what the discretionary fund is in the Episcopal Church?
A Well, the discretionary fund is used for charitable and pious works. I think, first of all, one, historically this is true, the church exists not only to proclaim the gospel, but to respond to needs of people. So, historically, this has always been true, but also, I think the Court would be interested to know that this is not only a tradition of the church, but this is also canon law of the church, Canon 20, Section 2E, I believe, of the national church'.
* * * * * *
Q . . . I think it would be helpful to the Court, Bishop Cerveny, if you would read that paragraph from the canon to the Court.
A Canon 20, Section 2E, states that: ‘The alms and contributions, not otherwise specifically designated, at the administration of the holy communion on one Sunday in each calendar month, and other offerings for the poor, shall be deposited with the minister of the parish, or with such church officer as shall be appointed by him, to be applied by the minister,' or under his superintendents, to such pious and charitable uses as shall by him be thought fit. During a vacancy, the vestry shall appoint a responsible person to serve as almoner.’ I think not only does this indicate that the — there is a canonical basis for a discretionary fund, but it’s clear that even when a minister leaves, that this is ongoing that the church in his absence appoint a person to continue the disposition of the income in his absence, and that person is called an almoner.
Q What church officers or officials have discretionary funds?
A What church officers — I would say that the — the only person who has a discretionary fund would be the priest in charge of the — of a congregation or the Bishop, and in the absence of a minister in the congregation, a priest, then the vestry can direct a member within its own ranks to dispose of the income to its charitable uses in his absence.
***** *
Q What sources of income are available to a minister or a Bishop for his discretionary fund? How do you—
A It would vary, but first of all, of Canon law, I would say that, at least, it is suggested that the open offering from a Holy Cummunion service each month be directed to the discretionary fund. The vestry at its discretion may decide that there be more than just one Sunday offering. It will come sometimes from individuals or groups of individuals, so, it comes from all kinds of sources.
Q Individuals who make gifts to discretionary funds?
A Individuals making gifts to discretionary funds, to the priests and the church.
******
Q What responsibility, if any exists, for ministers or Bishops to account for the use of its discretionary fund?
A I think it rests simply on his own moral authority. We hope that the man has the moral responsibility to use the funds that are given to him in the right— right use, .
******
Q In a parish or in a church situation, is the rector or minister responsible to or required to account to the vestry for the use of his discretionary fund?
A No, indeed, because oftentimes when you give money to people that you — you want to do that within the confines of a sacramental covenant with them, and that would breach that kind of a covenant. I dare say, if vestry members would ask where the disposition of the *1132 income is going, the priest would be very happy to tell them, not telling names, but describing the general needs upon his fund.
Q Have you ever had the situation where gifts made to a discretionary fund with some understanding by the donor as to the ultimate use for disposition of those moneys by the—
A Yes.
Q —by the minister or Bishop?
A There are times that people will want the money to be directed to a specific charitable use, and that being the case, the money is acceptable and so directed.
Q Is that consistent with the purpose of discretionary fund as you know of?
A That is very consistent with the purpose of discretionary fund.
Q Do you know whether or not other churches, such as the Roman Catholic Church or the Baptist Church have a similar tradition of a discretionary fund?
A I can’t .speak categorically for the Baptists, I think many of them do. I know this is true of the Roman Church, yes.
Q Do you know of any respects on which the practice in those churches differs from that which you just described?
A No. I don’t think so.”
An affidavit of Bishop Cerveny further clarifies this question as follows:
“5. Pursuant to Canon 20, Sec. 2(3), and the practice, custom and tradition thereunder, discretionary funds of ministers and bishops are considered the property of the church or diocese institutions with which the minister or bishop is associated, and are available to the minister or bishop as a result of the position held by him with the particular church or diocese. Should the minister or bishop vacate his position, the discretionary fund remains and is available to his successor in office. 6. The practice, custom, and tradition regarding discretionary funds described above is a practice not only with the Episcopal Church but also the Roman Catholic Church and other Christian churches known to the affiant.”
From Bishop Cerveny’s testimony and affidavit, it is obvious that the discretionary fund of a particular active clergyman is a fund of the church (the institution) which is administered by the clergyman in the performance of his duties. A gift to the discretionary fund is, thus, a gift to the church, an institution. It is also clear, however, that the only persons who administer a discretionary fund are a priest or minister in charge of a congregation or a bishop or a member of a vestry designated by the vestry to dispose of the income to its charitable uses in the absence of a minister or priest in the congregation. It follows that to qualify for future gifts from the trust, the gifts must be to a particular minister’s discretionary fund who was the recipient of a gift or gifts to his discretionary fund by Mrs. duPont during the five years specified, and such a minister may receive such a gift only if he is an active minister or priest of a congregation or an active bishop of the church at the time the gift is made. It matters not that the gift to a minister’s discretionary fund by Mrs. duPont was earmarked for a particular religious, educational or charitable use by the minister or even a personal use of the minister in furtherance of his ministry, as she undoubtedly considered such uses to be pious uses by a minister who was devoting his life to the work of the church. The trial court’s ruling that grants to the clergymen’s discretionary funds were not gifts to institutions is not supported by the evidence.
We find no error in the trial court’s ruling that the institutions eligible for grants under the will are limited to those named in the will or those previously receiving funds from Mrs. duPont within the five-year period designated in the will, and, therefore, we affirm as to that ruling.
As to the contention that the trial court erred in its general ruling that each trustee is not entitled to employ an independent attorney for advice or other professional duties in his administration of the trust estate, we find no error, subject to certain modifications which we will hereaf *1133 ter set forth. We point out initially that the trial court’s ruling is applicable or should be applicable only to employment of an attorney at the expense of the trust. There should be no prohibition to employment of an attorney by a trustee at his expense. If litigation ensues between a minority trustee and majority trustees and the court determines that the minority trustee is entitled to an award of attorney’s fees for the services of his attorney in the litigation [see Ball v. Mills, 376 So.2d 1174 (Fla. 1 DCA 1979)], the fee allowed should also encompass reasonable prelitigation advice and counsel of the attorney preparatory to such litigation.
Appellant Mills and appellee Juhan contend that the Will of Jessie Ball duPont, deceased, and § 737.402, Florida Statutes (1977), authorize each individual trustee to employ an attorney at the expense of the trust to advise and assist him in the performance of his duties. Mills and Juhan point to Item 20 of the Will which provides as follows:
“I specifically confer upon my executors and trustees the right to choose whatever attorneys or counsel are desired by them for purposes of advice or other professional duties and to compensate them from my estate or trust according to the reasonable value of their services.”
The following additional provision, contained in Item 15 of the Will, as amended by the Third Codicil, however, makes it clear that the above provision has reference only to the trustees as a body rather than to an individual trustee. It provides as follows:
“I do hereby provide by this codicil that a majority decision of the executors or trustees shall govern, but in the event that a majority decision is not reached, then the question or matter under consideration shall be referred to the appropriate court for decision and the decision of the court shall be final.”
Under Item 15, the trustees act by a majority thereof, and the decision to employ an attorney or attorneys is controlled by a majority.
Trustee Juhan refers to § 737.401 and § 737.402, Florida Statutes (1977) (a part of the Trust Administration Law). § 737.401 provides:
“The trustee has all powers conferred upon him by this part unless limited in the trust instrument.”
§ 737.402(1) provides:
“From the time of creation of the trust until final distribution of the assets of the trust, a trustee has the power to perform every act that a prudent. trustee would perform for the purposes of the trust, without court authorization, including, but not limited to, the powers specified in subsection (2).”
Subsection (2) provides:
“Unless otherwise provided in the trust instrument, a trustee has the power:
* ' * * * * #
(y) To employ persons, including attorneys, auditors, investment advisors, or agents, even if they are the trustee or associated with the trustee, to advise or assist the trustee in the performance of his administrative duties; to act without independent investigation upon their recommendations; and, instead of acting personally, to employ one or more agents to perform any act of administration, whether or not discretionary.
(z) To prosecute or defend actions, claims, or proceedings for the protection of trust assets and of the trustee in the performance of his duties.”
Appellee Juhan contends that nothing in the Will of Mrs. duPont specifies or requires that the trustees employ only one attorney to represent all of the trustees or forbids the selection of independent counsel by each of the four trustees if a single trustee deems independent counsel desirable for the purpose of advice or other professional duties; that the above statute authorizes a trustee to employ counsel and that such be an expense of administration for which the trustee is entitled to reimbursement. As above stated, however, we do not construe the Will to authorize the employment of an attorney by a single trustee if he is one of *1134 multiple trustees nor does the above-refer-. enced statute authorize such. Paragraphs (a) through (x) (omitted from the above quote to reduce verbiage) set forth general powers which obviously are possessed by multiple trustees only collectively or by the trustee of a single trustee trust. The powers set forth in paragraphs (y) and (z) are on no different footing than those preceding them and likewise apply only to the body of trustees as a unit or the trustee of a single trustee trust.
The Illinois Appellate Court, First District, Third Division, in the case of Re Estate of Greenberg, 15 Ill.App.2d 414, 146 N.E.2d 404, 66 A.L.R.2d 1162 (1958), had before it a question closely akin to the question presented here. There the Will contained a provision that “if at any time three persons shall be acting as co-executors and co-trustees hereunder, the determination of the majority of such co-executors and co-trustees shall control.” There one co-executor was given leave by the probate court to employ an attorney as his attorney. Subsequently, the other two co-executors petitioned the probate court for an order terminating the services of the attorney engaged by the single co-executor stating that it was their intention and desire to continue to retain other attorneys as counsel for all the co-executors. In resisting the petition, the one co-executor contended it was necessary and essential that he have counsel of his own choosing. He set forth reasons therefor similar to those presented by appellant Mills and appellee Juhan in the case sub judice. The probate court denied the single co-executor the right to have individual counsel. On appeal the superior court reversed and ruled that the individual co-executor could have independent counsel to represent him at the expense of the estate. The appellate court then reversed the superior court and ruled that an express direction in the Will that the determination of the majority of the co-executors shall control necessarily applied to the employment of legal counsel. There the court quoting with approval from In re Dunlop’s Estate, Sur., 142 N.Y.S. 286, 288, said:
“While executors are entitled to the services of a competent lawyer, the employment of additional lawyers by the individual executors should be regarded by the court with disfavor, and compensation out of the estate should not be allowed to such lawyers unless it appears to the satisfaction of the court that their employment was necessary for the protection of the interests of the legatees.”
We agree with the ruling of the Illinois and New York courts. As applied to the case sub judice, compensation to attorneys employed by an individual trustee should not be allowed from the funds of the trust unless it appears to the satisfaction of the court that their employment was or is necessary for the protection of the trust.
AFFIRMED in part and REVERSED in part and remanded for further proceedings consistent herewith.
LARRY G. SMITH, J., and MASON, ERNEST E., Associate Judge, concur.