411 So.2d 282 (1982)
The CASTAWAY LOUNGE OF BAY COUNTY, INC., Appellant,
v.
Phillip REID, D/B/a the Castaway Lounge, Appellee.
No. AC-420.
District Court of Appeal of Florida, First District.
March 18, 1982.
*283 Richard C. Trollope of Fitzpatrick, Syfrett & Hutto, Panama City, for appellant.
James B. Fensom of Barron, Redding, Boggs, Hughes & Fite, Panama City, for appellee.
PER CURIAM.
The appellant, defendant in the action below, contends the trial court erred in imposing an attorney's fee pursuant to Section 57.105, Florida Statutes (1979). We affirm.
Reid, owner of the Castaway Lounge in Panama City, filed suit for temporary and permanent injunctions to prevent defendant, The Castaway Lounge of Bay County, Inc., from opening and doing business under an identical name. The complaint, which also requested costs and attorney's fees, was filed September 12, 1980, and the temporary injunction issued that day. Defendant failed to answer or file any responsive pleadings, so a default was entered on October 20, 1980, followed by the order granting permanent injunction dated October 22, 1980. Then upon plaintiff's motion on November 5, 1980, the judge issued to defendant a show cause order for failure to comply with the permanent injunction.
This finally caused defendant to respond on November 25, 1980, when he served interrogatories on plaintiff, seeking information as to the nature of each violation of the injunction and to list each witness to the violations and their anticipated testimony.
Following the show cause hearing on December 1, 1980, the judge entered an order specifying four requirements for the defendant to comply with the injunction. Defendant was directed to write each of his suppliers and distributors enclosing a copy of the permanent injunction, informing them he was no longer doing business as "The Castaway Lounge of Bay County." He was to notify the State Beverage Department and other state or local licensing authorities, and he was required to contact the telephone company to discontinue his listing as "Castaway Lounge" and to disconnect the current number. Finally, he was required to file with the court copies of all these letters.
The judge scheduled a further hearing in the matter for January 5, 1981, at which time plaintiff could present other evidence as to noncompliance with the order, if such existed. On that date, evidence was presented and the judge found defendant in contempt because he had not changed the lounge's telephone number as required in the order of December 3, 1980. The judge scheduled another hearing for January 16, 1981, to consider remedial action taken by defendant, the imposition of the sentence *284 for contempt, and assessment of fees to plaintiff's attorney pursuant to Section 57.105. Each side filed a memorandum of law and plaintiff filed an affidavit alleging twenty-six and one-half hours of attorney time, including therein a detailed list of the hours spent. The judge awarded a $1,000 fee.
We find that the record supports the judge's conclusion, expressed in his order, that "there was a complete absence of a justiciable issue of either law or fact raised by the defendant at each stage of the litigation." Therefore, the judge properly assessed a fee against defendant pursuant to Section 57.105, which provides in its entirety:
The court shall award a reasonable attorney's fee to the prevailing party in any civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party.
Appellant argues that fees may never be assessed against a defendant in default because the statute is intended to penalize only those parties who "raise" a nonjusticiable issue. We find that contention without merit. We believe the statute speaks for itself.[1] We interpret the statute as requiring that a prevailing party's fees be paid when he is impelled, by the losing party, to waste judicial resources and needlessly expend his own time and money. This can occur when a losing party raises issues that are not justiciable, and it can occur when, as here, the losing party has forced the plaintiff to resort to the courts even though there are no justiciable issues that can be raised in defense.
We believe this case to be factually distinguishable and not inconsistent with our sister court's opinion in Sachs v. Hoglund, 397 So.2d 447 (Fla.3d DCA 1981), which affirmed the denial of fees against a defendant who failed to appear or file pleadings. Sachs was a suit on a promissory note; the defendant's participation was not necessary for the court to enforce the plaintiff's requested relief. Here, plaintiff was unable to prevent defendant's use of plaintiff's name without litigation. Defendant ignored the complaint, the temporary injunction, the permanent injunction, and two court orders on the rule to show cause. Defendant could have avoided needless litigation and expense by complying with the original order, or better yet, by not using the name "Castaway Lounge" in the first place as he had contractually agreed.
As stated in the recent Florida Supreme Court case of Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501, 7 FLW 89 (Fla. February 18, 1982):
The purpose of Section 57.105 is to discourage baseless claims, stonewall defenses, and sham appeals in civil litigation by placing a price tag through attorney's fee awards on losing parties who engage in these activities. Such frivolous litigation constitutes a reckless waste of judicial resources as well as the time and money of prevailing litigants. At 505.
We believe the statute was intended to penalize stonewallers and foot-draggers alike.
The appellant also argues that the order was improper insofar as it awarded attorney's fees regarding the contempt order. We reject that argument because the fee was reasonable, based on the hours the plaintiff's attorney spent in seeking and enforcing the injunction, and because Section 57.105 applies to "any civil action" without excluding contempt.
Potential litigants and their counsel must realize that serious thought should precede the pursuit of what later may be deemed to be an irresponsible and frivolous claim. *285 Conversely, those parties who ignore their responsibilities toward others with whom they have relations must bear the financial burden when provoking, by action or inaction, unjustified litigation. This we recognize to be the public policy enunciated by the legislature. The policy is not to cast a chilling effect upon use of the court system but only to discourage unwarranted controversy.
Under our interpretation of the statute there are, we believe, some potentials for abuse which, although not requiring consideration in the case before us, nevertheless warrant mention.
Complaining parties are not to assume from our decision that a rush to the courthouse should be the first order of business, where no defense is expected, on the theory that nothing will be lost by it, that is, that the expense of the lawsuit will be shifted to the other party. It is conceivable that the statute could be viewed as providing a deterrent to unwarranted, precipitous litigation, undertaken by a complaining party without reasonable notice or demand to the offending party, or without consideration of reasonable alternatives to litigation, where the circumstances would permit these steps without risk of loss or disadvantage to the complaining party.[2] Such unwarranted action, in our opinion, might very well justify assessment of attorney's fees for the opposing party if, for example, that party is driven to consult an attorney and appear in the case, even for the limited purpose of defending against the assessment of attorney's fees.[3]
Looking at the statute as we have interpreted it, from yet another vantage point, a party sued should not be tempted to offer a defense where otherwise one would not be appropriate, on the theory that since attorney's fees can be assessed whether the case is defended or not, nothing will be lost by presenting a defense, however lacking in merit it might be.
These possible abuses represent, to be sure, extreme and irresponsible actions. Our construction of the statute should not, and is intended not to encourage or sanction such conduct. Not every plaintiff who obtains a default judgment should recover attorney's fees. Not every defendant who offers no defense should escape an assessment of attorney's fees. Not every party who unsuccessfully maintains a claim or defense should suffer an assessment of attorney's fees.[4]
The statute represents an effort on the part of the legislature to help stem the tide of excessive and often completely unnecessary litigation, and it matters not whether the complaining or defending party is the one responsible for it.[5] In both instances the effect is the same: the courts are encumbered with frivolous and unnecessary litigation, at great cost to the public and the individual litigants, both monetarily and in terms of a lessening of respect for and confidence in the entire judicial system. It seems almost axiomatic that the time and resources of the judicial system consumed in processing unnecessary lawsuits, or completely *286 unmeritorious defenses, can be more profitably spent in dealing with some of the more pressing issues that come before the courts  whether these issues involve only the immediate parties, or substantial segments of our society.
This statute has been invoked sparingly by the trial courts, and in our opinion, it should remain so.[6] But the statute is not a panacea for the problem of excessive litigation, the causes for which are and have been endlessly debated and discussed, with only modest unanimity of opinion among those within or without the legal profession.[7] It can, however, be useful as a means of lessening the burden on the individual litigant in a given case, and to a lesser extent, for combatting the ever-growing problem of needless litigation.
Accordingly, the trial court's order is affirmed.
ROBERT P. SMITH, Jr., C.J., and LARRY G. SMITH, and WIGGINTON, JJ., concur.
NOTES
[1] Although we find the statute unambiguous, necessitating no further inquiry into legislative intent, State v. Egan, 287 So.2d 1 (Fla. 1973), our position is supported by the title of the provision, Ch. 78-275, which states it is an act "... providing that the court shall award a reasonable attorney's fee to the prevailing party in any civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact." We would give due weight to the title of this section. See Berger v. Jackson, 156 Fla. 251, 256, 23 So.2d 265, 267 (1945).
[2] The law favors the peaceful resolution of controversies, without necessity for resorting to the courts for solution, if at all possible. Ball v. Mills, 376 So.2d 1174 (Fla. 1st DCA 1979).
[3] Cf. Mac Bain v. Bowling, 374 So.2d 75 (Fla. 3d DCA 1979), and Randle-Eastern Ambulance Service v. Vasta, 360 So.2d 68 (Fla. 1978).
[4] As our sister court of the Fifth District put it: "Merely losing, either on the pleadings or by summary judgment, is not enough to invoke the operation of the statute." Allen v. Estate of Dutton, 384 So.2d 171, 173 (Fla. 5th DCA 1980).
[5] A "sue now  talk later" approach is in many instances just as deplorable (and often self-defeating) as a baseless "Sue me!" attitude. A noted professor of law offers the following approach to the problem: "We must design and utilize improved means of communication, within and without the courts. We must find better ways than the do-it-or-else approach to inducing desired behavior. Wiser use of incentives and more informative ways of communicating what the law expects of laymen, lawyers, jurors, and judges are approaches that deserve careful attention." Rosenberg, New Challenges And Responses In Resolving Civil Disputes, Volume 1972, Arizona State University Law Journal, Number Three, page 359, at 371.
[6] The infrequent use of the statute probably reflects a commendable degree of adherence by lawyers, generally, to the enjoinder found in the Oath of Admission to the Bar: "I will not counsel or maintain any suit or proceeding which shall appear to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land." As a practical matter, however, such restraints as may be imposed by professional or ethical considerations may well have less significance than we would like to think, considering the complexities of modern life and the laws we have erected in an attempt to control and govern it. Given present-day conditions, a "justiciable issue" can often quite literally be found in the very air we breathe.
[7] Most observers can, however, probably agree that at least one reason why suing has become a national pastime is summed up in the words of a Florida lawyer-educator: "... [T]oo many people view law as omnipotent because it is the principal agent for regulating behavior. We too often look for a legal solution even when a legal solution is inappropriate or non-existent." Bruce W. Flower, in University of Florida College of Law Law Center News, Summer 1978, p. 6.