In the Matter of the Residuary Trust Created by the Last Will and Testament of Virgil Sturdevant, Deceased.

Richard STURDEVANT, James Sturdevant, and Terry Sturdevant, Trustees of the Residuary Trust, Petitioners and Appellees,

v.

Robert STURDEVANT, Respondent and Appellant,

Lucylle Sturdevant, Richard Sturdevant, James Sturdevant, Terry Sturdevant, V. William Sturdevant, Sharon Chase and Thomas Sturdevant, Beneficiaries of the Residuary Trust, Respondents.

Civ. No. 9432–D.

Supreme Court of North Dakota.

Jan. 21, 1982.

Odell M. Astrup, Fargo, for Richard Sturdevant.

Thysell, Gjevre, McLarnan, Hannaher, Vaa & Skatvold, Moorhead, Minn., and Schuster & Brothers, Fargo, for Robert Sturdevant; argued by Galen J. Vaa, Moorhead, Minn.

P. W. Lanier, Jr., Fargo, for Lucylle Sturdevant, James Sturdevant, Terry Sturdevant, William Sturdevant, Sharon Chase and Thomas Sturdevant, Beneficiaries.

Johnson, Milloy, Johnson & Stokes, Wahpeton, for Richard, James and Terry Sturdevant, Trustees; argued by Mildred Johnson, Wahpeton.

ERICKSTAD, Chief Justice.

This is an appeal by Robert Sturdevant from an order of the District Court of Richland County, dated January 27, 1981. Through its order the court approved the Trustees' Settlement Agreement, Final Report and Account, and Petition for Distribution, dated December 12, 1980, for the Virgil Sturdevant residuary trust. We reverse the ·court's order and remand for further proceedings consistent with this opinion.

This is a continuation of protracted litigation regarding the administration of the residuary trust created by the will of Virgil Sturdevant upon his death in 1970. A recitation of relevant facts pertaining to the litigation of these matters can be found in *Sturdevant v. SAE Warehouse, Inc.*, 310 N.W.2d 749 (N.D.1981); and *Sturdevant v. SAE Warehouse, Inc.*, 270 N.W.2d 794 (N.D. 1978). Only those facts necessary to a resolution of the issues on this appeal will be reiterated in this opinion.

The assets of the trust currently include shares of stock of the following five corporations (as they are referred to by the parties): Sturdevants, Inc., Wahpeton (203 shares); Sturdevants, Elbow Lake (19 shares); Sturdevants, Auto Electric, Wahpeton (49 shares); Sturdevants, Moorhead-Hawley (79 shares); and LuShir Building Co. (63 shares). This litigation focuses upon the valuation and distribution of these shares.

The residuary trust has three co-trustees: James Sturdevant, Terry Sturdevant, and Richard Sturdevant. There are seven beneficiaries under the trust: the three trustees, V. William Sturdevant, Sharon Chase, Thomas Sturdevant, and Robert Sturdevant. On February 19, 1980, two of the trustees, James and Terry, filed a final report and account and petition for distribution with the district court to which Richard filed objections. During March 12 and 13, 1980, a hearing was held at which time the court received evidence regarding the valuation of the businesses held by the trust. On March 18, 1980, James and Terry filed an amended final report and account and petition for distribution. On April 30, 1980, the district court filed an order entitled "ORDER WITH REFERENCE TO FINAL REPORT AND ACCOUNT; AMENDED FINAL REPORT AND ACCOUNT: PETITION FOR DISTRIBUTION." Among other things that order included the following relevant provisions:

"4.

"An appraisal of each business belonging to the Residuary Trust must be made by a professional appraiser selected by the Court; the appraisals will be made under the supervision and direction of the Court; the companies on which a business appraisal will be made are as follows:

Sturdevants, Inc., Wahpeton, North Dakota

Sturdevants Auto Parts, Inc., Elbow Lake, Minnesota

Sturdevants Wholesale Parts, Moorhead-Hawley, Minnesota

LuShir Building Company, Wahpeton, North Dakota

"5.

"The cost of the appraisals will be paid by the Residuary Trust.

"6.

"Upon completion of all appraisals, the Court will determine the total value of the Residuary Trust.

"7.

"Each beneficiary is entitled to one-seventh (1/7) of the Residuary Trust.

"8.

"Each beneficiary has the right to elect to take his or her one-seventh (1/7) share either in cash or in kind. The trustees must make distribution in cash or in kind according to the election of the beneficiary.

"9.

"Upon such election, if trustees are unable to make distribution in cash, the Court retains jurisdiction and will review the matter at the time of final distribution."

Subsequent to entering its order the court appointed Appraisal Associates, of Kansas City, Missouri, to appraise the businesses held by the trust. Two appraisals were partially completed by Appraisal Associates; an appraisal of Sturdevants Wholesale Parts in Moorhead, Minnesota and an appraisal of the LuShir Building Company Properties in Wahpeton, North Dakota, by which time the trust had paid Appraisal Associates approximately $21,000. It was estimated that the total cost for completing the appraisals would be at least $35,000. With that knowledge two of the trustees, James and Terry, together with three other trust beneficiaries, Thomas, William, and Sharon, and Lucylle Sturdevant, Virgil Sturdevant's widow, requested and were granted an ex parte order dated July 25, 1980, terminating the appraisal work being performed by Appraisal Associates.

On December 12, 1980, the three co-trustees entered into a TRUSTEES' SETTLE-MENT AGREEMENT—FINAL REPORT AND ACCOUNT—PETITION FOR DISTRIBUTION which was filed with the district court on January 23, 1981. Each beneficiary of the residuary trust, except Robert, signed a Beneficiaries' Settlement Agreement approving the Trustees' Settlement Agreement and requesting the court to approve that agreement and to order distribution of the trust assets in accordance with it.

The settlement agreement placed a value on the trust of $651,378.00. Each beneficiary was to receive a 1/7 share of the trust in the amount of $93,054.00 in cash and property. The agreement provided that the beneficiaries, except Richard and Robert, would receive a small portion of cash and the balance of their share of the distribution in stock of the businesses held by the trust. The agreement further provided that although Richard and Robert desired to have their share of the distribution paid in cash there was not sufficient cash in the trust to give Richard and Robert a total cash distribution. Accordingly, the agreement provided that Robert and Richard would each receive a cash payment of $25,-938.50 with the balance of their distributive share in stock of LuShir, Sturdevants Auto Electric, and Sturdevants, Inc., to be placed into an escrow account under the following arrangement:

"Each corporation will enter into a separate escrow agreement with Richard Sturdevant and with Robert Sturdevant which will incorporate the following matters:

1. The stock will be placed in escrow in a bank chosen by the owner of the stock (Richard Sturdevant or Robert Sturdevant).

2. The stock will be non voting stock unless a default is made in payment.

3. The purchase price of the stock shall be the value established per share in this settlement agreement.

4. Each corporation will issue a promissory note to the owner of the stock for the amount of the indebtedness with interest at ten percent (10%) per

annum to be paid in equal monthly installments over a period of ten (10) years commencing immediately upon court approval of the settlement agreement.

5. Upon payment in full the escrow will be released and the stock will be treasury stock.

6. In the event of default in the payment of the note by any corporation, the stock of that corporation shall be returned to the owner and he will retain all payments previously made thereon."

Robert filed a "Notice of Beneficiary's Objection to Trustees' Settlement Agreement and Beneficiaries' Agreement" upon which a hearing was held on January 23, 1981. On January 27, 1981, the court entered its order approving the Trustees' Settlement Agreement and the Final Report and Account and ordering distribution in accordance therewith.

On appeal from the court's order of January 27, 1981, Robert has raised the following issues:

(1) Whether or not the court erred by failing to make any findings of fact regarding the fair market value of the businesses held by the trust and by failing to make any determination that the distribution was in the best interests of all beneficiaries;

(2) Whether or not the court's order approving the trustees' settlement agreement is contrary to the provisions of Virgil's will requiring cash distribution;

(3) Whether or not the court erred in awarding attorney's fees to the trustees' attorneys in the amount of $24,000 in the absence of evidence or findings of fact in support of those fees;

(4) Whether or not the court erred in disregarding Robert's offer to purchase the assets of the trust; and

(5) Whether or not the January 27, 1981, order conflicts with the April 30, 1980, order requiring a professional appraisal of the businesses held by the trust.

Robert asserts that the trustees have failed to properly ascertain the fair market value of the corporations held by the trust, that the trust has a fair market value greater than the $651,378 valuation placed on it by the settlement agreement, and that, as a consequence, he is entitled to a larger distribution than is provided by the settlement agreement. Robert asserts that the district court failed to make any findings of fact regarding these matters or to ascertain whether or not the valuation of the trust by the trustees was reasonable and in the best interests of the beneficiaries. In order to resolve this issue it is necessary to discuss the role of the district court in reviewing a trustee's final accounting and distribution which is objected to by one or more beneficiaries.

 It is the trustees' duty to comply with the provisions of the trust as set forth by the trustor. Upon establishing the residuary trust, Virgil's will directed the trustees to terminate the trust ten years after Virgil's death and to distribute its assets to the beneficiaries in equal parts. In this regard the will included the following relevant provisions:

[NINTH] "My Trustees shall have power and authority to do any act or thing reasonably necessary or advisable for the proper administration and distribution of the trusts created by this my Will.... I hereby grant to my Trustees ... full power and authority, during the term of such trusts and for purposes of division and distribution after their termination, in my Trustees' continuing sole discretion:

\* \* \* \* \* \*

[NINTH] "5. To make division or distribution, whenever herein required, in whole or in part in money, securities, or other property and in undivided interests therein, and to continue to hold any such undivided interest in any trust hereunder, and in such division or distribution the judgment of the Trustees concerning the propriety thereof and the valuation of the properties and securities concerned shall

be binding and conclusive on all persons in interest.

\* \* \* \* \* \*

[TENTH] "D. For the purpose of carrying out this directive, I would urge that when a distributive share is about to be made under the terms of the Residuary Trust, if at all possible such distributive share be made in cash, retaining insofar as possible,· the family business intact."

The foregoing trust provisions place discretionary authority in the trustees for purposes of valuating and distributing the trust assets. We believe that the Restatement (Second) of Trusts § 187 (1959) sets forth the appropriate standard for the court's review of the trustees' valuation and distribution in this case:

"Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion."

It was incumbent upon the district court, upon Robert filing an objection to the valuation and distribution provided under the trustees' settlement agreement, to determine whether or not the trustees had abused their discretion in this regard. To do that it was necessary for the court to make findings of facts, supported by the evidence, as to the fair market values of the property held by the trust. However, the district court failed to make any findings of fact in this regard.

During the March, 1980, hearing some evidence was submitted by the trustees regarding the value of the businesses held by the trust. Subsequent to that hearing the court made no findings of fact regarding the valuation of those properties, but, instead, issued an order directing that appraisals be made to determine the value of those businesses. Only partial appraisals of two of the businesses were completed when the court ordered the appraisal work terminated during July, 1980, by its ex parte order. With the exception of those partially completed appraisals, no additional evidence of trust property values was submitted to the court subsequent to the March, 1980, hearing and prior to the court's order of January 27, 1981, approving the trustees' settlement agreement and petition for distribution. Furthermore, the court did not make any findings of fact or conclusions of law in support of its January 27, 1981, order. There was no express determination by the court as to the fair market values for the businesses held by the trust nor as to the reasonableness or fairness of the settlement agreement and distribution.

If the settlement agreement had been agreed to by all of the beneficiaries it would not have been necessary for the court to review the valuation and distribution of trust assets by the trustees, but when an objection was filed by one of the beneficiaries it became necessary for the court to review the trustees' actions. It became necessary for the court to make appropriate findings of fact regarding the value of the trust property to determine whether or not the trustees had abused their discretion in valuing and distributing the trust assets.

An analogous situation to the court's review of the valuation and distribution of trust property is the court's duty to make an equitable distribution of property under Section 14–05–24, N.D.C.C., upon granting a divorce. With regard to the court's division of property in such a situation, this Court stated in *Nastrom v. Nastrom*, 262 N.W.2d 487 (N.D.1978):

"The finding of the value of the parties' property may be crucial to a resolution of the question of equitable distribution of that property. The trial court made no findings of fact with regard to the value of individual items of property, though there was some evidence of value of many of the significant items before the court.

"In this case, where much of the property is difficult to value, where there is a conflict in the evidence as to the value of some properties, where the only evidence as to the worth of other properties is a veiled hint that they are worthless because they are heavily financed, and

where the evidence of the value of one property, the interest in Nastrom-Peterson Motors, Inc., is widely divergent even though all of that evidence originated with Ned, we are provided with no sufficient basis for computing the property's value by any method other than guesswork." 262 N.W.2d at 491.

In the instant case, as in *Nastrom, supra,* the property involved is difficult to value and the trial court failed to make any findings of fact as to the values of the businesses held by the trust prior to its approval of the trustees' settlement agreement and distribution. Without such findings by the court, supported by adequate evidence, it is impossible for this Court to affirm the court's order approving the trustees' settlement agreement, final accounting, and distribution. Accordingly, we conclude that it is necessary to remand this case for findings as to the value of the property held by the trust, and, if deemed necessary by the district court, for the introduction of additional evidence to support such findings.

■ Robert also asserts that the court erred in approving the trustees' settlement agreement because that agreement is contrary to provisions of Virgil's will which, Robert contends, require a total cash distribution to the beneficiaries. Virgil's will provides in relevant part:

"NINTH: ... I hereby grant to my Trustees ... full power and authority, during the term of such trusts and for purposes of division and distribution after their termination, in my Trustees' continuing sole discretion:

* * * * * *

"5. To make division or distribution, whenever herein required, in whole or in part in money, securities, or other property and in undivided interests therein, ...

* * * * * *

"TENTH: It is my intention and wish and directive to the Trustees of the trusts hereinabove created, that insofar as possible, they carry out the following objectives with reference to the handling and management of the family businesses in which I have an interest relating to the auto parts and related lines:

* * * * * *

"D. For the purpose of carrying out this directive, I would urge that when a distributive share is about to be made under the terms of the Residuary Trust, if at all possible such distributive share be made in cash, retaining insofar as possible, the family business intact."

The Restatement (Second) of Trusts § 347 (1959) discusses the mode of distributing trust assets among beneficiaries:

"If upon the termination of the trust there are several beneficiaries among whom the trust estate is to be distributed, whether the trustee is under a duty to convey the property to the beneficiaries as tenants in common, or to divide the property and distribute it in kind, or to sell it and distribute the proceeds, depends upon the terms of the trust and in the absence of such terms upon what under all the circumstances is reasonable."

In this case the mode of distributing the trust assets upon its termination is vested in the discretion of the trustees with the direction that "if at all possible such distributive share be made in cash, retaining insofar as possible, the family business intact." The trustees' settlement agreement provides that Robert is to receive a partial cash distribution with the balance owing him to be paid in stock of three of the corporations held by the trust under an agreement that the corporations will repurchase the stock over a ten-year period. In approving the trustees' agreement the district court made no findings as to whether or not it was possible for the trust to distribute Robert's share entirely in cash consistent with "retaining ... the family business intact." Only upon making such a finding, supported by adequate evidence, could the court make a determination as to whether or not the trustees had complied with the trust in distributing the property according to the settlement agreement. Accordingly,

we conclude that it is necessary to remand this case for the district court to resolve this matter. Upon remand it is within the district court's discretion to determine whether or not additional evidence is required for the court to make necessary findings and to reach a determination on this matter.

Robert also asserts that the trial court erred in awarding attorney's fees to the trustees' attorneys in the absence of evidence or findings of fact in support of those fees. In *Raszler v. Raszler*, 81 N.W.2d 120 (N.D.1957), this Court stated:

> "As a general rule a trustee is entitled to be reimbursed for the reasonable fees of an attorney properly employed in connection with the administration of the trust estate, where the employment was for the benefit of the estate. Scott on Trusts, Second Edition, Section 246. The allowance of such attorney's fees rests largely in the discretion of the trial court." 81 N.W.2d at 123.

In this case the trial court awarded attorney's fees, in the amount of $12,000, to the attorneys for James and Terry and also awarded attorney's fees, in the amount of $12,000, to the attorneys for Richard. In so doing, the court made no findings with regard to the reasonableness of those attorney's fees, and we have found no documentation in support of those attorney's fees in the record. Nor did the court make any determination as to whether or not the requested attorney's fees, or any part thereof, were rendered on behalf of the trustees personally rather than on behalf of the trust. Only those attorney's fees which are sought for services rendered on behalf of the administration of the trust are properly payable from the trust assets. Those attorney's fees, if any, which are sought for services rendered on behalf of a trustee personally for matters of his own self-interest are not properly payable with trust assets.

In exercising its discretion to award attorney's fees for services rendered in the administration of a trust the trial court must proceed cautiously as the Florida District Court of Appeals cogently explains in *Ball v. Mills*, 376 So.2d 1174 (Fla.Dist.Ct. App.1979):

> "The trust is entitled to have notice of the amount claimed and the specific services for which compensation is claimed, and to have the court make a determination of the reasonableness and necessity for the charges. A mere statement indicating the expenditure of a certain number of hours and a demand for payment based upon the number of hours times the hourly rate, is not sufficient. The reasonableness and necessity of the services generally, and the reasonableness and necessity of the time devoted to each step in the proceeding must be determined by the trial judge, and it must be determined, as well, that all of the claimed services were rendered for the benefit of the trust itself, and not for some other purpose." 376 So.2d at 1181.

In this case there has been no evidence submitted in support of the requests for payment of attorney's fees from the trust assets, and the trial court has made no findings as to the reasonableness or legitimacy of the attorney's fees awarded by the court. Accordingly, we conclude that the trial court abused its discretion in awarding attorney's fees, and we deem it necessary to remand for a determination of this matter by the court in accord with the foregoing discussion.

■ On January 23, 1981, Robert filed a "PROPOSAL AND OFFER" to purchase all of the trust assets for $651,378; the value placed upon the trust assets under the trustees' settlement agreement. Robert asserts that the trial court erred in failing to enter a decision on this proposed offer. Relevant to this issue Virgil's will provides at paragraph 10B and C:

> "B. That my brother, Glen, and my sons, Richard and James shall have the right to buy additional interests in the family business to the fullest extent of their ability. I specifically grant this right to my sons, Richard and James, notwithstanding that they are co-trustees.

"C. That any other of my children who demonstrate an interest in becoming active in the family business shall also have the right to buy in, subject to the approval of my brother, Glen, and my co-trustees, and in case of any dispute, or disagreement, the co-trustees shall be the sole judges and final arbiters in such dispute."

According to the foregoing provisions, Glen, Richard, and James are given priority to buy additional interests in the family businesses. Although the other children are also given the right to "buy in", their right is subject to approval by the co-trustees who are the "sole judges and final arbiters" of the decision. Any such decision by the trustees, being a matter within their sole discretion, is subject to review by the court only to the extent of determining whether or not the trustees abused their discretion. The trust does not state that the other children, including Robert, have a right to buy out all of the trust assets, and, consequently, it appears beyond dispute that the trustees would be acting within their authority to deny such an offer. Nevertheless, we conclude that upon remand of this case the trial court should review for abuse of discretion the trustees' decision to deny Robert's offer and should enter a determination on the matter.

██ Robert also asserts that the district court's order of January 27, 1981, conflicts with that court's order of April 30, 1980, by approving the trustees' settlement agreement without requiring completion of the valuation appraisals ordered by the court in its April 30, 1980, order. The court's April 30, 1980, order, requiring appraisals of the businesses held by the trust, also provided that, ". . . the appraisals will be made under the supervision and direction of the Court; . . ." Consequently, we conclude that the court was acting within its supervisory authority when it terminated the appraisals in July, 1980, because of the unanticipated cost of the appraisals and that the orders are not conflicting in this regard. However, upon remand of this case the district court must determine whether or not supplemental evidence, including additional appraisals, are necessary for it to make appropriate findings and determinations which could stand scrutiny on appeal.

The court's order of January 27, 1981, is reversed, and the case is remanded for further proceedings in accordance with this opinion.

VANDE WALLE, and SAND, JJ., concur.

PAULSON, J., deemed himself disqualified January 15, 1982.

PEDERSON, Justice, concurring specially.

One of the dictionary definitions of the word "paradox" is "a statement that is false even though it is true." Although the opinion authored by the Chief Justice does not explicitly say so, this appeal is one which requires the application of Rule 52(a), NDRCivP.

Rule 52(a) requires findings of fact in every case tried to the court where there is a fact issue in dispute. If there is no clear understanding before the trial of what the fact issues are, there is not apt to be evidence introduced to support the necessary finding. If a finding of fact is made by the trial court and there is no evidence to support it, that finding is clearly erroneous. It is the function of trial lawyers—not trial judges—to see that evidence is introduced which will support the findings which will need to be made if they are to win their lawsuit. *See* my recent concurrences in *Svetenko v. Svetenko*, 306 N.W.2d 607 (N.D. 1981); *Backhaus v. Renschler*, 304 N.W.2d 87 (N.D.1981); *Steckler v. Miller & Holmes, Inc.*, 303 N.W.2d 560 (N.D.1981); *Krohnke v. Lemer*, 300 N.W.2d 246 (N.D.1980); *C.B.D. v. W.E.B.*, 298 N.W.2d 493 (N.D. 1980); and dissents in *Keidel v. Rask*, 304 N.W.2d 402 (N.D.1981), and *Vetter v. Vetter*, 267 N.W.2d 790 (N.D.1978).

I sympathize with trial courts and trial lawyers.