In the Matter of the Residuary Trust Created by the Last Will and Testament of Virgil STURDEVANT, Deceased.

Richard STURDEVANT, James Sturdevant, and Terry Sturdevant, Trustees of the Residuary Trust, Petitioners and Appellees,

v.

Robert STURDEVANT, Respondent and Appellant,

Lucylle Sturdevant, Richard Sturdevant, James Sturdevant, Terry Sturdevant, V. William Sturdevant, Sharon Chase and Thomas Sturdevant, Beneficaries of the Residuary Trust, Respondents.

Civ. No. 10459.

Supreme Court of North Dakota.

Nov. 22, 1983.

Steven L. Latham [argued], of Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for respondent and appellant Robert Sturdevant.

C. Nicholas Vogel [argued], of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for petitioners and appellees.

GIERKE, Justice.

This is an appeal by Robert Sturdevant from the judgment of the District Court of Richland County authorizing the distribution of assets in the Virgil Sturdevant Residuary Trust. We affirm.

This appeal marks the fourth time we have been called upon to review matters regarding the administration of this residuary trust. *See Sturdevant v. Sturdevant,* 315 N.W.2d 263 (N.D.1982); *Sturdevant v. SAE Warehouse, Inc.,* 310 N.W.2d 749 (N.D. 1981); and *Sturdevant v. SAE Warehouse, Inc.,* 270 N.W.2d 794 (N.D.1978). Only those facts necessary to a resolution of the issues on this appeal will be reiterated in this opinion.

On January 17, 1970, Virgil Sturdevant died, leaving his wife and seven children as survivors. His will was admitted to probate shortly thereafter. The basic provisions of his will provided for the division of his estate into two separate trusts: the "Lucylle Trust" and the "Residuary Trust". Under the terms of the will, each surviving child was entitled to a one-seventh (⅐) interest in the "Residuary Trust". The appellant, Robert Sturdevant, is one of these beneficiaries.

Prior to his death, Virgil Sturdevant owned and operated several businesses with his brother, Glen Sturdevant. These businesses were engaged primarily in the purchase and sale of automotive parts and were operated in the form of closely-held corporations. The bulk of the residuary trust's assets consists of stock in these various family corporations.

On January 27, 1981, the District Court of Richland County entered its order approving the trustees' final report and accounting, and ordered distribution of the assets of the residuary trust according to the plan submitted by the trustees. Robert appealed the order to this court. *Sturdevant v. Sturdevant,* 315 N.W.2d 263 (N.D.1982). We reversed the district court's order and remanded the case because of a lack of formal findings of fact by the trial court in four areas: (1) the trustees' basis for the valuing of trust properties, *Sturdevant, supra* 315 N.W.2d at 267–268; (2) the proposed distribution of the trust assets to Robert partly in cash and partly in stocks, *id.* at 268; (3) the propriety of paying the legal fees incurred by the trustees in arriving at an agreed method for distributing the trust assets, *id.* at 269; and (4) the rejection of Robert's offer to purchase all of the trust assets for a fixed amount, *id.* at 269–270. On remand, the district court conducted an evidentiary hearing. Additional evidence was taken concerning each of the issues set forth above. The district court then issued detailed findings of fact, conclusions of law, and its order for judgment. The findings of fact and conclusions of law were further supported by a lengthy memorandum opinion. Judgment was entered March 17, 1983, and from that judgment Robert Sturdevant once again appeals.

The issues presented for our review are substantially identical to those raised in Robert's prior appeal to this court, *Sturdevant, supra* 315 N.W.2d 263:

1. Whether or not the method adopted by the trustees to determine the value of the trust assets constitutes an abuse of discretion;

2. Whether or not the trustees abused their discretion in refusing to distribute Robert Sturdevant's share of the residuary trust to him in cash; and

3. Whether or not the trustees abused their discretion by refusing Robert's offer to purchase all of the trust assets for a fixed amount.

Robert also raises two other issues for the first time on this appeal:

4. Whether or not the district court abused its discretion in denying Robert's request for attorney fees; and

5. Whether or not the district court erred in determining that the amount of an unenforceable promissory note should be deducted from Robert's distributive share of the trust assets.

We will discuss these issues in the order listed.

## I

Virgil Sturdevant's will, which established the residuary trust, directed the trustees to terminate the trust ten years after Virgil's death and to distribute its assets to the beneficiaries in equal parts. The will invested the trustees with considerable discretion regarding the valuation and distribution of these assets. In this regard the will included the following relevant provisions:

[NINTH] "My Trustees shall have power and authority to do any act or thing reasonably necessary or advisable for the proper administration and distribution of the trusts created by this my Will.... I hereby grant to my Trustees ... full power and authority, during the term of such trusts and for purposes of division and distribution after their termination, in my Trustees' continuing sole discretion:

. . . . .

[NINTH] "5. To make division or distribution, whenever herein required, in whole or in part in money, securities, or other property and in undivided interests therein, and to continue to hold any such undivided interest in any trust hereunder, and in such division or distribution the judgment of the Trustees concerning the propriety thereof and the valuation of the properties and securities concerned shall be binding and conclusive on all persons in interest.

. . . . .

[TENTH] "D. For the purpose of carrying out this directive, I would urge that when a distributive share is about to be made under the terms of the Residuary Trust, if at all possible such distribu-tive share be made in cash, retaining insofar as possible, the family business intact."

In the previous appeal of this case we quoted with approval from Restatement (Second) of Trusts 187 (1959):

" 'Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion.' " *Sturdevant, supra* 315 N.W.2d at 267. We further held that in order for the district court to determine whether or not the trustees had abused their discretion in regard to valuation of the trust assets "it was necessary for the court to make findings of facts, supported by the evidence, as to the fair market values of the property held by the trust". *Id.* Because the district court failed to do so, we remanded the case so the district court could remedy that deficiency.

On remand the trustees submitted additional evidence regarding the method of valuation which they employed in computing the values of the stock in the various family corporations. The trustees adopted as the fair market value of the various businesses the valuations placed upon them by Adam Thiel, C.P.A., an accountant who had worked for the family corporations for a number of years. Mr. Thiel testified that he had determined the fair market values of the businesses by taking the book value of each corporation from the most recent financial statements and then had adjusted the book values of the company-owned assets, such as the real estate, that were assessed at values above book value. The final figures represented, in Mr. Thiel's judgment, the fair market value of the trust's interests in the various corporations on June 28, 1983. Mr. Thiel also testified that he had employed the same method for establishing the value of businesses in connection with *purchases and sales between willing buyers and willing sellers*, for setting values for buy-sell agreements or shareholder buy-outs, and for establishing the fair market value of businesses for the purposes of the estate tax. Robert present-

ed no competent evidence which might support a finding that the fair market value of the corporations might be higher than that proposed by the trustees.

The district court found that the method employed by Adam Thiel and adopted by the trustees to establish the value of the trust's interests in the various corporations "provided a fair and reasonable basis for determining the fair market value of the trust assets". The court further found that the total fair market value of those assets was $651,215.38.

Findings of fact by the trial court will not be set aside unless they are clearly erroneous. Rule 52(a), North Dakota Rules of Civil Procedure. "A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *In re Estate of Elmer*, 210 N.W.2d 815, 820 (N.D.1973). Upon reviewing the evidence in the record we conclude that the district court's findings of fact regarding the valuation of the trust assets were not "clearly erroneous" and that the trustees did not abuse their discretion in determining the value of those assets.

## II

■ The second issue presented for our review concerns the trustees' refusal to distribute Robert's distributive share of the residuary trust to him in cash.

Virgil Sturdevant's will "urged" that his trustees, at the termination of the residuary trust, distribute the trust assets to the beneficiaries in cash "if at all possible" while retaining the family business "intact". The trustees testified, and the district court found as a fact, that it was not possible to pay Robert's distributive share in cash because there was simply not sufficient cash available in the trust. In order to provide Robert with the cash he demanded, the trustees proposed a distribution plan which provided for the payment to Robert and the other beneficiaries of a small amount of cash with the balance of Robert's interest in the trust to be distributed to him in the form of shares of stock which were to be redeemed by the respective corporations through payments over a ten-year period and bearing ten percent interest. The district court found that this plan was reasonable and proper under the circumstances of this case and that it was within the discretion granted the trustees under Virgil Sturdevant's will.

Robert does not dispute the finding that the trust did not contain sufficient cash to satisfy his distributive share entirely in cash. He does contend, however, that it was possible for the trustees to raise the cash while retaining the family businesses intact.

At the time set for distribution there were only three ways for the trustees to raise the cash necessary to satisfy Robert's demands. First, the trustees might have sold some of the stock to an outsider. Disregarding for the moment the difficulties presented by the sale of a minority interest in a closely-held corporation, such a sale would clearly have been contrary to Virgil's expressed intent that the corporations remain intact as family-owned businesses. Another alternative would have been for the other beneficiaries to raise the money to purchase Robert's shares from the trust. The trustees, however, had no power to demand such action of the beneficiaries. The district court, in its memorandum opinion, also noted that it was "in no position to direct the other beneficiaries to raise the money to pay off Robert Sturdevant in cash. It is up to them if they desire to take such action." The only other alternative left to the trustees would be to accept Robert's offer to purchase the entirety of the trust assets for $651,215.38, the market value of the corporate stock as determined by Adam Thiel. It is the trustees' rejection of this offer that constitutes Robert's third issue on appeal.

## III

■ Virgil Sturdevant's will contained the following provisions relevant to the purchase of shares in the family corporations by the beneficiaries:

[TENTH] "B. That my brother, Glen, and my sons, Richard and James shall have the right to buy additional interests in the family business to the fullest extent of their ability. I specifically grant this right to my sons, Richard and James, notwithstanding that they are co-trustees.

"C. That any other of my children who demonstrate an interest in becoming active in the family business shall also have the right to buy in, subject to the approval of my brother, Glen, and my co-trustees, and in case of any dispute, or disagreement, the co-trustees shall be the sole judges and final arbiters of such dispute."

Robert contends that the trustees' rejection of his offer to purchase was an abuse of discretion.

On remand, the testimony at the evidentiary hearing indicated that Robert had left his employment with the family corporations a short time before Virgil's death. The district court found as a fact that at no time during the ten years of the residuary trust's existence did Robert indicate an interest in becoming involved in the family businesses. This finding is supported by all of the relevant testimony and by Robert's own admission. The district court also found that Robert's offer to purchase was not made within the ten-year period during which the trust was to be in existence and, accordingly, was made too late. The district court determined that, because the offer was made after the expiration of the trust, it could not have been considered by the trustees. Restatement (Second) of Trusts 344 (1959), states that "[W]hen the time for the termination of the trust has arrived, the trustee has such powers and duties as are appropriate for the winding up of the trust". See also Bogert, Trusts & Trustees 1010 (1983). If Robert's claim of right to purchase the assets of the trust were grounded solely on the provision of Virgil's will which grants his children the right to purchase shares in the family corporations there would be no question but that the offer came too late.

Robert, however, contends that his proposal, if accepted, would not only have allowed the trustees to distribute the respective shares in cash to the trust beneficiaries, but also would have allowed the family businesses to remain intact. The question to be answered, therefore, is whether the trustees abused their discretion in rejecting Robert's offer in light of Virgil's directive that the distributive shares of the residuary trust be paid in cash "if at all possible". The trustees determined, and the district court agreed, that the family businesses could not be maintained intact if the trustees' interest in the family corporations had been sold to Robert Sturdevant. The record of this case establishes that Robert has been in continual conflict with the trustees and the other beneficiaries over the administration and distribution of this trust. Since he left the family business prior to Virgil's death, he has set up at least one business in direct competition with the family interests in Moorhead, Minnesota. His conflicts with the other family members are not limited to business affairs, but extend to personal differences as well. Under these circumstances, the finding by the district court that a sale of the trust assets would undermine the family businesses was not clearly erroneous and the rejection of Robert's offer was within the discretion conferred on the trustees by Virgil's will.

## IV

As we noted earlier, this is the second time we have been asked to review the issues discussed above. Following our reversal of the district court's order of January 27, 1981, Robert moved the district court for an order requiring the trust to pay the attorney fees incurred by him in connection with challenging the proposed distribution of the trust assets and prosecuting the appeal. The district court denied his motion, stating in its findings of fact, that:

"XV.

"The attorneys fees incurred by Robert Sturdevant were not incurred on behalf of the trust or the trustees, but rather were incurred for the benefit of Robert Sturdevant individually. The services

provided have not resulted in any net benefit to the beneficiaries of the trust and did in fact result in increased expense to the trust."

■ It is true that many cases have held that a beneficiary is entitled to attorney fees and costs incurred in good faith litigation for the purpose of preserving the trust property or for requiring the trustees to comply with the law. *See, e.g., In re Atwood's Trust,* 227 Minn. 495, 35 N.W.2d 736, 9 A.L.R.2d 1126 (1949); *Van Gorden v. Lunt,* 234 Iowa 832, 13 N.W.2d 341 (1944); *In re Linch,* 139 Neb. 761, 298 N.W. 697 (1941). The determination of whether to award such fees, however, rests within the sound discretion of the trial court and will not normally be overturned unless the appellant shows an abuse of discretion. *See Coulter v. Coulter,* 328 N.W.2d 232, 238 (N.D.1982); Annot., 9 A.L.R.2d 1126, 1143.

■ The record of this case contains sufficient evidence to support the trial court's determination that Robert instituted this litigation for his own benefit.

Nothing that Robert has done in this particular litigation has increased the value of the trust assets for the benefit of all the beneficiaries, nor has it resulted in requiring the trustees to do anything other than what they have already done. Our reversal and remand in the previous appeal, *Sturdevant, supra* 315 N.W.2d 263, was a result of certain deficiencies attributable to the trial court. The trustees cannot properly be held accountable for those deficiencies.

## V

■ Robert's final contention is that the amount of a past-due promissory note, held by the trust in connection with a loan to Robert, should not be deducted from his distributive share nor should it be included in computing the value of the trust assets.

Included in the inventory of the residuary trust, from the very beginning of its administration, were four promissory notes dated December 14, 1966, from James, Robert, Terry, and Richard Sturdevant. It is conceded by all parties that these notes are presently unenforceable because of the running of the statute of limitations.

The plan for distribution proposed by the trustees and approved by the district court by its order of January 27, 1981, provided that Robert's distributive share be reduced by $11,053.00. This represents the principal due on his promissory note, plus interest through 1980. Robert testified that the final payment on the note became due sometime in 1973–1974. Assuming this to be true, a cause of action based upon that promissory note would have been barred, due to the six-year statute of limitations, sometime in 1979–1980. § 28–01–16, North Dakota Century Code. It follows, therefore, that the issue raised in this appeal could have been raised by Robert in his previous appeal in 1981. *Sturdevant, supra* 315 N.W.2d 263. We said in *Pearce v. North Dakota Workmen's Compensation Bureau,* 68 N.D. 318, 279 N.W. 601, 603 (1938), that "questions that were raised or *could have been raised* [emphasis added]" in a previous appeal "will not be re-examined". By failing to raise the issue regarding this unenforceable promissory note in his previous appeal, Robert has thereby waived that issue.

For the reasons set forth in this opinion, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.